[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR MODIFICATION
The defendant father seeks to modify the order of child support, entered after an agreement of the parties on April 19, 1993. That order called for the payment of child support in the amount of One Hundred ($100.00) Dollars per week, and the assumption, by the defendant father of parochial school expenses for the minor child.
The minor child, Jason, is fifteen (15) years old, and attends Sacred Heart High School in Waterbury. The father spends time with Jason on Tuesdays after work, overnight, and on Fridays until Saturday evening, on a weekly basis. Jason has his own room in his father's house, and spends vacation time with him. On cross-examination the defendant admitted that they had not gone on vacation, and that he did not spend time with Jason in the past summer, but for the stated visitation. The claim that this is a shared custody arrangement is not proven, and will not compel the court to deviate from the Uniform Support Guidelines.
The defendant father has been employed with Connecticut Light and Power for fifteen (15) years. He is presently a consultant, and earns approximately Fifty-eight Thousand ($58,000.00) Dollars per year, as a base salary. He has had an opportunity to work overtime. He claims that his CT Page 8165 ability to work overtime has not occurred in this calendar year. He was remarried in 1991, and has filed joint income taxes with his current wife. The defendant claims business losses from his wife's business which decreased their tax liablity, [liability] and which had him decrease his withholding on a biweekly basis. Her losses are based upon her own property, which she owned prior to the marriage. He however has a benefit from his ability to file jointly, and to take all legal deductions, which allow him and his current wife to have the benefit of increased net income.
The defendant claims that the loss claimed as a result of his Christmas tree farm business should not be a consideration, and that the Guidelines deductions for child support computation purposes should entail what would apply to a person filing as a single person on income earned.
In 1993, both parties claimed their son as an income tax deduction, despite the fact that until that year, the defendant father had historically claimed the child as his dependent. His 1993 income tax return is a joint return with his current wife, and contains the claimed losses.(See Plaintiff's Exhibit #5) The defendant offered his W-2 for 1994 which became Defendant's Exhibit #1. That disclosed income of Sixty-four Thousand, Seven Hundred, Fifty-Nine and 98/100 ($64,759.98) Dollars.
The defendant computed his taxes if he filed as a single person claiming one exemption for the year 1994, and if he filed as a single person for the year 1995. If the defendant did file as a single person, he would pay more in taxes. Clearly he does not file as a single person. These computations (Defendant's 2 and 3), do not comport with the defendant's reality.
There was testimony that the parties had an understanding that defendant would be able to have the child as a dependency deduction. The history of the case reveals that that had been the practice of the parties until recently. It is apparent that the defendant should continue to claim the child for income tax purposes, so long as he is in compliance with this court's orders for child support purposes.
The plaintiff was called by the defendant, and she agreed that her income had increased in 1994 by Ten Thousand CT Page 8166 ($10,000.00) Dollars. In 1994, the plaintiff had two jobs, and thereafter was hired by one of her employers full time. She now makes Forty-five Thousand ($45,000.00) Dollars in her current employment. At time of the order which is the subject of the motion to modify, her income was Thirty-three Thousand ($33,000.00) Dollars. Her overall assets have been reduced in that year's time, while her liabilities have been consistent.
The defendant's assets have remained consistent, while he shows more debt. The debt has changed, but appears from the affidavits to have been incurred in the past year.
Mr. Peter Marino, a certified public accountant, testified as an expert for the plaintiff. He applied the child support guidelines to the income figures for the current period. The information as to the defendant's income came from subpoenaed documents from his employer. Her figures were from her W-2's provided to her attorney, then communicated to the expert.
In 1993, the defendant paid approximately ten (10%) percent in taxes, and the expectation is that at least some of the losses will be available in tax year 1994, and thereafter.
The Guidelines remark concerning Schedule C income that what income contains is reasonable expenses.
Mr. Marino presented a bill for Four Hundred, Fifty ($450.00) Dollars for his testimony. The plaintiff claims that she was required to hire an accountant because of how the issues on this motion were framed. Further, it is of interest that the attorney for the defendant is himself a certified public accountant, and presented prepared exhibits for the court's review.
On cross-examination, the witness testified that those computations are correct from the point of view of a person filing seperately [separately]. (Defendant's 2 and 3) The guidelines computation based upon the defendant's theory, then would yeild [yield] a child support order of either $131 or $146 per week. (See Defendant's 4 and 5) The witness was directed to Sec. 11 definition of "gross income", specifically a(9) which deals with "self-employment", which states: "self-employment earnings, after deduction of all legitimate business expenses." This defendant is not self-employed, and it CT Page 8167 appears that the operation of the Christmas tree farm is a beneficial tax deduction for the defendant and his second wife. He has ample income from his employment for the support of his child.
The defendant claims that the legitimate losses for tax purposes are to be included. The Guidelines define allowable deductions to include withholding payments with all exemptions. The defendant claims that with respect to the computation for child support, that the computation can only take into account exemptions on the return. The court does not agree. The definition of "allowable deductions" in Sec. (1) of the Guidelines are quite specific.
The defendant contends that it is not what a party takes as exemptions, but what that party is entitled to take as exemptions that is at issue when computing child support according to the guidelines. Again, the court disagrees.
The plaintiff testified on her motion for contempt. She indicated that the defendant was in arrears on the payment of school-related expenses in the amount of Three Hundred, Twenty-seven and 93/100 ($327.93) Dollars. She indicated that there is little if any communication between the parties, and that it is strained when communication occurs. Her claim concerns payments not made in the past two years. She conceeded [conceded] that he paid for books, extracurricular activities, and most clothes. Tuition at Sacred Heart is Four Thousand, One Hundred ($4,100.00) Dollars per year, plus required expenses, including clothes.
The defendant proposes as argument the reasoning of the court, Barall, J., in FA-328320, Carolyn Rogers v. James Rogers, May 18, 1995, Hartford Superior Court. This court has a transcript of the findings and rulings of the court in Rogers, with some supporting facts. This court is not bound by the opinion of a concomitant judge of the Superior Court, even one who is very esteemed by this court. State v. Deep,181 Conn. 284, 435 A.2d 333 (1980). This court must make a determination on the facts of this case, with what the court finds is the mandate under the Uniform Support Guidelines.
The court finds that the agreement of the parties in 1993, which was ratified and made an order of the court, called for payment of child support in the amount of One CT Page 8168 Hundred ($100.00) Dollars per week, and the payment of parochial school education, the tuition payment for which is currently Four Thousand, One Hundred ($4,100.00) Dollars per year, or Seventy-eight ($78.00) Dollars per week, calculated on a fifty-two week year.
The income of the plaintiff has increased since the order in 1993. However, applying the guidelines to both parents incomes, the court finds that the appropriate amount of child support is as computed in Plaintiff's Exhibit 10, or One Hundred, Seventy-nine ($179.00) Dollars per week. The court finds that the standard deductions applied to both parents incomes, to yeild [yield] the correct result. There is not change in circumstances, then, insofar as the parties made a determination that parochial school was necessary for the minor child, and that the balance paid in cash to the primary residential parent should be as it is.
Even if the court elected to utilize the amounts proferred by the defendant father, the court cannot say that the change is substantial as a matter of law or fact. The income increase of mother does little to change the mandatory payment of child support pursuant to the Guidelines.
With respect to the plaintiff's motion for contempt, the evidence demonstrates that over the past two years, there have been advanced certain sums of money by the plaintiff to meet school expenses of the child. The total amount is as claimed, or Three Hundred, Twenty-seven and 93/100 ($327.93) Dollars, is found, and the defendant shall pay that arrearage at the rate of Twenty ($20.00) Dollars per week. The court cannot find that there is a wilful contempt, because if the parties had communicated concerning the amounts due, the court has every reason to infer that those sums would have been paid.
The defendant shall pay the cost of the expert hired by the plaintiff, up to that amount claimed at the hearing, or Four Hundred, Fifty ($450.00) Dollars. The plaintiff shall be responsible for her attorneys fees. The court finds that the defendant has no liquid assets from which he could make such a contribution.
Orders shall enter consistent with this opinion. CT Page 8169
DRANGINIS, J.